This is an appeal from the Circuit Court of Jefferson County. Certain landowners filed a petition for a writ of mandamus to require the Jefferson County Board of Equalization (Board) to hear the landowners' protest of the revaluation of their property. The trial court granted the Board's motion for summary judgment. The trial court's action was based upon its conclusion that the protest period had expired, and, therefore, the landowners' action was untimely.
The dispositive issue on appeal is whether or not the period for protest in this instance began to run when the valuation notice was mailed or when the notice was actually received.
The record reveals that the Jefferson County Board of Equalization was ordered by the Alabama Revenue Department to reappraise all property in the county. Pursuant to an Attorney General's opinion, the Board carried out the order in compliance with Title 51, §§ 80-82, of the 1958 Recompiled Code of Alabama, which was determined to be the applicable statute.
On September 17, 1982, the Board sent to all property owners in Jefferson County a "Property Valuation Notice." The notice was sent by certified mail.
The outside envelope that contained the notice stated "IMPORTANT — PROPERTY VALUATION NOTICE INSIDE." Attached to the outside envelope was the stub of the certified mail receipt, showing the receipt number with spaces provided for dates of delivery or attempted delivery. These spaces were designated as, "1st Notice," "2nd Notice," and "RETURN."
In the first space marked "1st Notice," the date of September 20, 1982, was written. This was the date that the landowners in this case actually received the notice.
On the inside of the envelope, the actual notice slip contained the caption "VALUATION NOTICE," and under that heading was a blocked area with three sections. The different sections were entitled "DATE," "OLD MARKET VALUE," and "NEW MARKET VALUE." The date of September 17, 1982, appeared in the section entitled "DATE."
In the lower portion of the notice the following phrase appeared: "[Y]ou may file a WRITTEN protest to the Board of Equalization within 45 days from the date of this notice to the Board office shown above."
The Board received written notices of protest from several landowners on November 4, 1982. The Board replied to the protests by stating that the forty-five-day period had begun to run on September 17, 1982, and had lapsed on November 1, 1982, making the request untimely.
As indicated, certain landowners filed a petition for a writ of mandamus, claiming that the forty-five-day period had begun to run on September 20, 1982, the date that the notice was actually received. The appellants in this case were granted a motion to intervene in the original petition. Subsequently, the Board made a motion for summary *Page 604 
judgment, which was granted, and hence, this appeal.
When there is an appeal from the granting of summary judgment, this court will look to the same factors that the trial court considered in ruling on the motion. Williamson v.Shoults, 423 So.2d 874 (Ala.Civ.App. 1982).
The trial court may grant a motion for summary judgment when all the basic facts are undisputed and the matter is one of interpretation or reaching of a conclusion by the court. BibleBaptist Church v. Stone, 55 Ala. App. 411, 316 So.2d 340 (1975).
It appears that the pertinent facts in this case are not in dispute. Both parties have agreed that there was a date on the outside of the envelope of September 20, 1982, when the notice was received. They have also agreed that the date of September 17, 1982, was printed in the blocked area on the actual valuation notice.
Our analysis then must focus on whether the substantive law was correctly applied. The applicable statute states in part:
 "[I]n counties where the board of equalization serves full time, protests must be filed in writing within 45 days of the date of the certified docket. . . . In the event the board of equalization raises the assessed value of any property at any time, notice of such raise shall be given by registered mail, addressed to the party against whom said property is assessed."
Title 51, § 82, Code of Alabama 1940 (Recomp. 1958 as amended 1964).
The landowners, through able counsel, contend that the Board did not have a "certified docket" and, therefore, the forty-five-day period should begin to run on the day of actual notice.
The Alabama legislature did not define "certified docket," and as far as this court can determine, no meaning has been determined by a court of law. Even though no definition has been made, there is no reason to believe that it can be equated with actual notice. Put another way, whatever "certified docket" means, the dispositive issue is, when does the protest period begin to run?
The general rule is that, where service of notice is authorized by statute, the date that the notice is properly addressed, registered, and mailed controls rather than the date on which the letter is received. Ford v. Genereux,104 Colo. 17, 87 P.2d 749 (1939); Amodio v. Civil Service Commission ofDepartment of Civil Service, 81 N.J. Super. 22, 194 A.2d 512
(1963); Texas Real Estate Commission v. Howard, 538 S.W.2d 429
(Tex.Civ.App. 1976). We agree.
Here, the statute clearly authorizes notice by certified mail when the value of property is increased. There was evidence that all the notices were mailed on September 17, 1982, the same date that was marked in the block on the "VALUATION NOTICE." Therefore, it appears that the proper date to begin the running of the forty-five-day period was September 17, 1982.
Additionally, no other interpretation would allow the Board to effectively bring the revaluation program to an end. Without an absolute beginning point, each taxpayer could possibly begin the protest period at a different time and, thus, delay the assessments indefinitely.
In this instance, the notices were properly mailed on the date clearly marked on the "VALUATION NOTICE," to wit, September 17, 1982. There was evidence that the notices were received on September 20, 1982, apprising the landowners of the increase in valuation and giving them a reasonable length of time to submit a written protest. Under these facts, we believe that the trial court did not err in determining that the forty-five-day period began to run when the notices were registered and mailed. This would end the protest period on November 1, 1982, making the November 4, 1982, protest untimely. Summary judgment was proper.
This case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur. *Page 605